Harry E. Rudolph, aka Babe McCoy v. Commissioner.
Rudolph v. Commissioner
Docket No. 67935.
United States Tax Court
T.C. Memo 1959-230; 1959 Tax Ct. Memo LEXIS 18; 18 T.C.M. (CCH) 1113; T.C.M. (RIA) 59230; December 9, 1959
*18 Tax accounting: Reconstruction of income: Bank deposit method: Approximation. - Taxpayer was a matchmaker employed by a boxing and wrestling club. The Commissioner determined that taxpayer had unreported taxable income for 1953, which was based upon the so-called unidentified or bank deposit method. Although the evidence was not entirely satisfactory, the Tax Court determined under the Cohan rule that taxpayer had unreported taxable income in the amount of $8,000 for 1953. Additions to tax: Failure to pay tax: Negligence. - An addition to tax for negligence was approved by the Tax Court, where no evidence whatever was presented to show that the Commissioner's determination was in error. Evidence of taxpayer's failure to keep proper records furnished affirmative support for this determination. Joseph Sternbach, C.P.A., 610 South Broadway, Los Angeles, Calif., for the petitioner. Alfred L. Margolis, Esq., and Donald P. Chehock, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax of petitioner for the year 1953 in the amount of $5,902.10 and an addition to tax in the amount of $303.03 *19 pursuant to the provisions of Section 293(a), Internal Revenue Code of 1939. The issues are: 1. Did the respondent err in determining that petitioner had unreported income in the amount of $10,004.56 in the year 1953? 2. Did the respondent err in determining that part of the deficiency was due to negligence? Other issues raised in the petition are no longer contested by the petitioner. Findings of Fact Petitioner, a resident of Los Angeles, California, filed his income tax return for the year 1953 with the district director for the sixth district of California. During the year 1953, petitioner was a matchmaker employed by the Olympic Boxing and Wrestling Club (hereinafter referred to as the Olympic Club) in Los Angeles. In his income tax return for that year he reported compensation received from the Olympic Club of $27,847.98 and tax withheld of $5,398.30. In this return he also reported the receipt of "Miscellaneous Boxing and Wrestling Income" of $5,078.00. During the year 1953 petitioner had a checking account in the Citizens National Bank in Los Angeles. He did not keep any formal books, and his records consisted principally of bank statements showing deposits *20 and withdrawals, check stubs and cancelled checks, vouchers, and some memoranda of amounts of income received in addition to his salary from the Olympic Club. During 1953 the deposits in his checking account totalled $52,397.47. He did not deposit therein all of the salary checks he received during that year from the Olympic Club. It was his practice during 1953 and prior thereto to cash some of these checks and to keep on hand a substantial amount of cash, approximately $1,500. Some of this cash was used by him to pay part of his living, personal and business expenses, some to make loans to fighters who were in need of money between fights, some to make advances to fighters to cover their travelling and other expenses when they had fights away from Los Angeles, and some to cash checks for purses received by out-of-town fighters to provide them with needed cash. Some of the loans by petitioner to fighters during 1952 and 1953 were made by checks issued on his bank account. These included loans to Harold Dade totalling $375 in 1952 and $630 in 1953; loans to Fred Herman totalling $265 in 1952 and $680 in 1953; and a loan to Fred Beshore of $600 in 1953. In addition he made cash loans *21 to Beshore in the aggregate of $900 during 1953. In April 1952 petitioner lent $2,161.75 to a woman to enable her to purchase an automobile. During the year 1952 she repaid $450 and during 1953 she repaid the balance of the loan in small amounts of $50, $75 and $100. Petitioner kept a looseleaf notebook in which he entered amounts of any loans made by cash or check, and when a fighter or his manager reimbursed him for such loans he crossed out the notation he had made of the loan. Usually these loans were repaid in cash. During 1953 petitioner received some cash repayments of loans made in 1952 and 1953. In 1953 two fighters deposited with him for safekeeping portions of purses they had won, and petitioner held such deposits for them for two weeks or a month. When the amount of cash which petitioner had on hand exceeded about $1,500 he would deposit the excess in his bank account. In 1953 Paddy Quaid was the manager of a fighter named Ramon Fuentes. Pursuant to his arrangement with Quaid, Fuentes was entitled to 50 per cent of each "purse", and the manager was to keep the remaining 50 per cent after paying the fighter's expenses. However, in accordance with an arrangement between *22 Quaid and petitioner, Quaid paid over to petitioner during 1953 in cash one-half of Quaid's net share of six out of a total of seven purses which Fuentes earned in 1953. The seven purses amounted in the aggregate to more than $50,000. Petitioner did not produce any records showing the amount of income he received in 1953 as his share of Fuentes' purses. Quaid kept records showing how much he received and how much petitioner received as shares of these purses. Joseph Sternbach, a certified public accountant who prepared petitioner's income tax return for 1953, borrowed these records and never returned them to Quaid despite requests by Quaid that he do so. During the year 1953 petitioner received some commissions for making matches for fighters in states other than California and in foreign countries. The commissions were paid in cash and by check and most of them were deposited in his checking account. At the time Sternbach was preparing petitioner's 1953 return petitioner brought to Sternbach's office some memoranda on which he had recorded miscellaneous income received by him, and read to Sternbach some figures taken from his memoranda which, when totalled by Sternbach, amounted *23 to $5,078. Sternbach entered this amount on a schedule, which was attached to petitioner's 1953 return, as "Miscellaneous Boxing and Wrestling Income". Sometime after he gave Sternbach the figures taken from the memoranda, petitioner destroyed the memoranda. An internal revenue agent, assigned to investigate petitioner's return for the year 1953, asked petitioner for an explanation of the miscellaneous income of $5,078 reported therein, including the dates when it was received, whether received in the form of cash or check, and what disposition had been made of it. The only information he received from petitioner was that this income represented seven items which totalled $5,078. The revenue agent then made an analysis of petitioner's bank deposits to determine whether he had any unreported income for 1953, and prepared the following schedule: Total deposits (Citizen's Nat. Trust & Savings Bank Eighth
and Vermont Branch, Commercial account)
$52,397.47
Less: Salary checks deposited
$15,864.02
Interest income - May Finance Co.
285.55
Miscellaneous boxing and wrestling income per
return
5,078.00
Bank loan - Citizen's Bank
2,500.00
Loan repaid - From May Finance Co.
10,000.00
Exchange
500.00
Loan - Olympic Boxing and Wrestling
7,500.00
Income tax refunds
234.34
Taxpayer's checks deposited
431.00
42,392.91
Omitted gross income
$10,004.56
*24 The $15,864.02 item represents salary checks received by petitioner from the Olympic Club which he deposited in his account, and does not include salary checks that he cashed or endorsed to third parties because the agent's examination of the cash deposits indicated to him that no part of the proceeds of such checks were deposited. The $5,078 item represents the miscellaneous income shown on petitioner's return. The revenue agent assumed, in petitioner's favor, that this amount was deposited in petitioner's account although he was unable to identify all or any part of it as having been deposited. The remaining items deducted by the agent in arriving at the amount of omitted gross income consisted of items he identified as having been reported as taxable income by petitioner or as representing receipts which were not taxable. In the notice of deficiency respondent determined that petitioner had unreported taxable income for the year 1953 in the amount of $10,004.56, and added this amount to the taxable income reported on petitioner's return. This determination was based on the schedule prepared by the revenue agent which was incorporated in the statement attached to the notice of *25 deficiency as the explanation for this adjustment. Petitioner had unreported taxable income for the year 1953 in the amount of $8,000. At least part of the deficiency was due to negligence. Opinion RAUM, Judge: The determination of deficiency herein was based upon the so-called unidentified or unexplained bank deposit method. Petitioner made deposits in his bank account in 1953 aggregating $52,397.47. After consultation with petitioner and his representative the respondent's agent was able to identify $37,314.91 of those deposits as having their origin either in nontaxable receipts or in income which had been reported by petitioner in his 1953 return. Of the remaining $15,082.56, he arbitrarily allocated $5,082 to an item of income in that amount which petitioner had reported. Such allocation was a concession in petitioner's favor, but even after that allocation there remained $10,004.56 in unexplained deposits which the Commissioner treated as unreported income. The burden of proof was upon the petitioner. We are reasonably satisfied on the evidence, although it is by no means strong, that most of the $5,082 was deposited, thus leaving at least $10,004.56 which the petitioner *26 was required to explain. Petitioner's evidence in this respect was far from satisfactory. It was general, vague and often so conclusory in nature as to defy critical examination. Testimony that certain fighters repaid loans to petitioner is hardly equivalent to proof that such repayments were in fact deposited by petitioner, particularly in the light of evidence that he would always have substantial amounts on his person, aggregating about $1,500. Further, in view of the destruction and absence of records. we do not have great confidence in petitioner's self-serving testimony that he in fact did deposit such repayments. Again, there is persuasive evidence that petitioner received a portion of Fuentes' purses in 1953, and there is no showing whatever by him that such income was included in his returns. Nevertheless, we were persuaded that in the case of two fighters certain amounts were left with petitioner for safe keeping and that some portion of such amounts did find its way into petitioner's bank account. The evidence in this respect was not entirely satisfactory, but doing the best we can with the materials at hand, even after making allowance for such deposits, it is our best *27 judgment, and we have found as a fact (cf. Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2) that petitioner had unreported taxable income in the amount of $8,000 for 1953. As to the addition to tax for negligence under Section 293(a), the burden of proof was upon petitioner, and no evidence whatever was presented to show that the Commissioner's determination was in error. Indeed, evidence of petitioner's failure to keep proper records furnishes affirmative support, if such were needed, for this determination. The addition is hereby approved, subject to recomputation as to amount based upon the revised basic deficiency. Decision will be entered under Rule 50.